UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**NORTHERN DIVISION at ASHLAND**

| | | |
|---|---|---|
| ELDEN DEWITT CONN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Case No. |
| v. | ) | 0:13-cv-138-JMH |
| | ) | |
| CAROLYN W. COLVIN, ACTING | ) | **MEMORANDUM OPINION** |
| COMMISSIONER OF SOCIAL | ) | **AND ORDER** |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*

This matter is before the Court upon cross-motions for Summary Judgment [D.E. 13, 14] on Plaintiff's appeal of the Commissioner's denial of his application for disability and disability insurance benefits. [Tr. 9-25].[1] The Court, having reviewed the record and being otherwise sufficiently advised, will deny Plaintiff's motion and grant Defendant's motion.

**I. Overview of the Process and the Instant Matter**

The Administrative Law Judge ("ALJ"), in determining disability, conducts a five-step analysis:

> 1. An individual who is working and engaging in substantial gainful activity is not disabled, regardless of the claimant's medical condition.
>
> 2. An individual who is working but does not have a "severe" impairment which significantly limits his

---

[1] These are not traditional Rule 56 motions for summary judgment. Rather, it is a procedural device by which the parties bring the administrative record before the Court.

physical or mental ability to do basic work activities is not disabled.

3.    If an individual is not working and has a severe impairment which "meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s)", then he is disabled regardless of other factors.

4.    If a decision cannot be reached based on current work activity and medical facts alone, and the claimant has a severe impairment, then the Secretary reviews the claimant's residual functional capacity and the physical and mental demands of the claimant's previous work.  If the claimant is able to continue to do this previous work, then he is not disabled.

5.    If the claimant cannot do any work he did in the past because of a severe impairment, then the Secretary considers his residual functional capacity, age, education, and past work experience to see if he can do other work.  If he cannot, the claimant is disabled.

*Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994) (citing 20 C.F.R. § 404.1520 (1982)).  "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled." *Id.*  "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Secretary." *Id.*

In the instant matter, the ALJ determined that Plaintiff did not engage in substantial gainful activity during the relevant time period under step one. [Tr. 14]. Under step two, the ALJ found that Plaintiff's medically determinable impairments of vertebrogenic disorder and residuals of right

2

shoulder injury were "severe" as defined by the agency's regulations. [Tr. 14]; 20 CFR §§ 404.1520(c), 416.920(c). The ALJ further found that his right hand problem, hypertension, and sleep apnea were "non-severe" impairments. [Tr. 17-18]. Additionally, the ALJ found that there was not enough evidence to support Plaintiff's claims of anxiety-related disorder or substance addiction disorder. [Tr. 18].

During step three of the analysis, the ALJ considered all of Plaintiff's impairments and decided that none of them met the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1. [Tr. 18-19]. After further review of the record, the ALJ concluded at step four that Plaintiff had a residual functional capacity ("RFC") to perform a range of light work as defined in 20 C.F.R. 404.1567(b). [Tr. 19]. The ALJ found that Plaintiff also had the following limitations: Plaintiff needs a sit/stand option at one-half two hour intervals throughout the workday; Plaintiff cannot climb ladders, kneel, or crawl; Plaintiff cannot reach overhead on the right; and Plaintiff cannot work in temperature extremes or high humidity. [Tr. 23].

The ALJ found that Plaintiff was unable to perform any of his past relevant work. [Tr. 23]. However, there were jobs in the national economy that Plaintiff could perform. [Tr. 23-25]. Thus, the ALJ determined that Plaintiff is not disabled under the Social Security Act. [Tr. 25].

In this appeal, Plaintiff argues that the ALJ erred by failing to include all of Plaintiff's impairments, that the ALJ failed to give adequate weight to the treating physician, and that the ALJ improperly relied on the opinion of a non-examining consultant medical examiner.

## II. Standard of Review

In reviewing the ALJ's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, judicial review of the ALJ's decision is limited to an inquiry into whether the ALJ's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the ALJ employed the proper legal standards in reaching her conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286 (citations omitted).

## III. Factual and Procedural Background

Plaintiff was 42 years of age at the alleged disability date [Tr. 23] and has a GED. [Tr. 37]. Plaintiff has past work

4

experience as a pipefitter. [Tr. 23]. Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning on April 6, 2010. [Tr. 12]. The claims were denied initially and upon reconsideration. [Tr. 12]. Plaintiff requested a hearing with the ALJ, which took place on April 13, 2012. [Tr. 12]. The ALJ issued an unfavorable decision denying disability insurance benefits on May 10, 2012. [Tr. 25].

According to Plaintiff, he has a constant throbbing pain in his shoulder and back. [Tr. 177]. Plaintiff claims that the pain spreads to his neck and right leg. [Tr. 178]. Plaintiff treats his pain with pain medication, muscle relaxers, heat pads, and heat balms. [Tr. 178]. Plaintiff claims that he takes Percocet, Flexeril, and Xanax. [Tr. 178].

Plaintiff made routine visits to the King's Daughters Medical Center in Ashland, Kentucky. Plaintiff was treated for low back pain on October 16, 2009 [Tr. 240]. Plaintiff went to the emergency room on May 6, 2008 complaining of chest pain that radiated into his back. [Tr. 291]. On June 8, 2007, Plaintiff was treated for fatigue, GERD, anxiety/depression, and low back pain. [Tr. 332]. On March 7, 2007, Plaintiff presented with pain in the chest and upper abdomen. [Tr. 333]. On August 15, 2007, Plaintiff visited the hospital for right shoulder pain, which he attributed to a pulled muscle. [Tr. 340]. On January 24, 2008,

Plaintiff visited with complaints of diarrhea and low back pain. [Tr. 344]. Plaintiff again visited on November 10, 2008 complaining that his Zoloft was not working, he had right shoulder problems, and he felt stressed. [Tr. 350]. Finally, on January 5, 2010, Plaintiff visited complaining of low back pain after falling on ice. [Tr. 369].

Plaintiff regularly treated with Dr. Paul Lewis of the Olive Hill Family Care Center. On May 7, 2010, Dr. Lewis diagnosed Plaintiff with dislocation, sprain and strain thorax with lower back and pelvis, anxiety, rhinitis, and hypertension. [Tr. 388]. On September 1, 2010, Plaintiff was treated for dislocation, sprain and strain thorax with lower back and pelvis, anxiety, GERD, and coronary artery disease. [Tr. 469]. On December 27, 2010, Plaintiff presented with anxiety, back pain, and hip pain. [Tr. 472-73]. On February 25, 2011, Plaintiff was treated for anxiety, back pain, hip pain, and osteoarthritis. [Tr. 475-76].

Plaintiff was also treated by Portsmouth Medical Solution for neck and low back pain that went to his right leg. This treatment lasted from October 2009 to February 2011. [Tr. 394-420; 462-66]. Additionally, Dr. Twana Hatton treated Plaintiff for his impairments. On January 11, 2012, an examination of the cardiovascular system revealed normal heart sounds, regular rate, and rhythm with no murmurs. Plaintiff's right shoulder had

muscular deficits, and was sitting lower than the left with decreased strength and noted weakness. [Tr. 570]. On January 30, 2012, an examination revealed the same findings as the examination on January 11, and Plaintiff was treated for degenerative disc disease and hypertension. [Tr. 568].

An MRI of the lumbar spine in October 2009 revealed minimal accentuated lumbar lordosis. At the L3-L4 level, there was a left posterolateral extraforaminal disc protrusion superimposed on a disc bulge/osteophyte complex that results in no significant spinal canal stenosis. [Tr. 235]. At the L4-L5 level, there is a minimal tiny central disc protrusion superimposed on a disc bulge/osteophyte complex which results in no significant spinal canal stenosis or neural foraminal narrowing. [Tr. 235]. At the L5-S1 level, there is a central/left paracentral disc protrusion superimposed on a disc bulge/osteophyte complex which results in no significant spinal canal stenosis or left neural foraminal narrowing. [Tr. 235]. As a result, Plaintiff was diagnosed with mild multilevel degenerative disc disease. [Tr. 235].

An MRI of the right shoulder on November 30, 2007 revealed advanced fatty atrophy of the supraspinatus muscle, the infraspinatus muscle, and the teres minor muscle; full thickness tear and moderate tendinous retraction of the supraspinatus tendon; abnormal signal, tear and tendinosis of the

infraspinatus and teres minor tendons; mild signal changes and thickening of the subscapularis tendon; probably a mild tear of the superior labrum; the subacromial space was essentially totally obliterated or markedly narrowed; and mild joint effusion was present. [Tr. 326-27].

Vocational expert Dwight McMillion testified at the hearing before the ALJ. [Tr. 44]. Mr. McMillion testified that a person with an RFC equivalent to the ALJ's RFC finding for Plaintiff would not be able to return to Plaintiff's past relevant work. [Tr. 45]. However, Mr. McMillion found that there would be jobs in the national economy that someone with Plaintiff's RFC could perform. [Tr. 45-46]. Mr. McMillion found that a hypothetical person could perform no jobs in the national economy if the same hypothetical person was able to lift less than 10 pounds occasionally, could stand a total of two hours in an eight-hour day, and sit for less than six hours in an eight-hour day. [Tr. 46-47].

Plaintiff stated that his day consists of showering, eating, and watching television. [Tr. 183]. On a good day, Plaintiff is able to visit with family and friends. [Tr. 183]. Plaintiff has experienced no problems with personal hygiene [Tr. 184], is able to prepare his own meals [Tr. 185], and sometimes does housework. [Tr. 185]. Plaintiff is able to drive and go shopping for groceries. [Tr. 186]. Plaintiff testified that he

was able to walk fifty yards at a time, can stand for an hour and a half to two hours, and can lift 25 pounds with both hands. [Tr. 41].

**IV. Analysis**

Plaintiff claims that the ALJ erred in three ways. First, Plaintiff contends that the ALJ failed to include Plaintiff's impairments of obesity, hypertension, anxiety, depression, coronary artery disease, fatigue, osteoarthritis, and shortness of breath. [D.E. 13-1 at 8]. Second, Plaintiff contends that the ALJ failed to give great weight to the opinions of treating physician Dr. Lewis, which was supported by the findings of examining physicians Dr. Azmat and Dr. Guberman. [D.E. 13-1 at 11-12]. Finally, Plaintiff contends that Dr. Hernandez, a non-examining medical consultant, relied on an RFC completed by a non-acceptable medical source, and, therefore, it was improper for the ALJ to give weight to Dr. Hernandez's opinion. [D.E. 13-1 at 13]. The Court will discuss each of Plaintiff's arguments in turn.

### I. The ALJ included all of Plaintiff's credible impairments.

Plaintiff argues that the ALJ failed to discuss his impairments of obesity, hypertension, anxiety, depression, coronary artery disease, fatigue, osteoarthritis, and shortness of breath. Plaintiff was required to "furnish medical and other

evidence that [the Social Security Administration could] use to reach conclusions about [his] medical impairment(s) and, if material to the determination of whether [he was] disabled, its effect on [his] ability to work on a sustained basis." 20 CFR § 404.1512(a). The ALJ properly discussed all of the alleged impairments of which Plaintiff presented evidence.

The ALJ specifically discussed coronary artery disease and found that "[a]fter placement of a stent, the claimant has not presented with cardiac problems and his cardiac exams have been within normal limits." [Tr. 17]. As to Plaintiff's hypertension, the ALJ specifically discussed the impairment and found that it was controlled by medication and was not severe. [Tr. 18]. The ALJ further noted that an examination on August 8, 2011 revealed a "normal cardiovascular system." [Tr. 21]. Additionally, the ALJ found that Plaintiff had not put forth enough evidence to show that he had an anxiety disorder. [Tr. 18].

While not specifically mentioning the term "fatigue," the ALJ found "no basis" for finding that Plaintiff "must be allowed to lie down as necessary during the workday to control pain because he cannot sleep, or that he needs a recliner at his place of work to recline periodically instead of lie down." [Tr. 25]. Thus, even assuming Plaintiff put forth evidence of fatigue, the ALJ adequately discussed this impairment.

As to the alleged impairments of obesity, shortness of breath, and osteoarthritis, Plaintiff failed to meet his burden of providing medical evidence to establish these impairments. Plaintiff's Disability Report, which asked Plaintiff to include "all of the physical or mental conditions that limit [his] ability to work," only listed neck and back problems, right shoulder problems, and heart problems. [Tr. 157]. Plaintiff did not mention any of these problems at the hearing before the ALJ, even when questioned by counsel. Further, in his brief before this Court, Plaintiff does not cite to any medical evidence supporting that obesity, shortness of breath, or osteoarthritis is an impairment to his ability to work. [D.E. 13-1 at 8-9].

The conditions of obesity, shortness of breath, and osteoarthritis may have been included in some of Plaintiff's medical records, but a mere mention, without some evidence that the condition affects Plaintiff's ability to work, does not constitute an impairment the ALJ must consider. *See Land v. Astrue*, No. 12-1-HRW, 2013 WL 1145888, at *5 (E.D. Ky. Feb. 22, 2013) ("There is no diagnosis of obesity in the record, nor has any medical source, treating or otherwise, suggested functional limitation as a result of obesity. Therefore, the Court finds that the ALJ did not err in this regard."); *Jones v. Comm'r of Soc. Sec.*, No. 11-14430, 2012 WL 6757248, at *8 (E.D. Mich. Dec. 17, 2012) (citations omitted) ("[T]he ALJ was not obligated to

11

discuss Plaintiff's obesity because neither Plaintiff nor the medical evidence suggested that her obesity was a significant impairment."). Plaintiff has not presented evidence that obesity, shortness of breath, or osteoarthritis affects his ability to work. Therefore, the ALJ was not required to address these alleged impairments, and did not err in failing to do so. Thus, the ALJ properly included all of Plaintiff's credible limitations.

**II. The ALJ gave adequate weight to treating physician Dr. Paul Lewis' RFC assessment.**

Plaintiff alleges that the ALJ did not give adequate weight to treating physician, Dr. Paul Lewis.

> [A]n opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a nonexamining source), and an opinion from a medical source who regularly treats the claimant (a treating source) is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a nontreating source).

*Gayheart v. Comm'r of Social Sec.*, 710 F.3d 365, 375 (6th Cir. 2013) (citations omitted). "Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in the case record.'" *Id.* at 376 (quoting 20 CFR § 404.1527(c)(2)).

"The Commissioner is required to provide 'good reasons' for discounting the weight to a treating-source opinion." *Id.* at 376 (citing 20 CFR § 404.1527(c)(2)). "These reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* (quoting Soc. Sec. Rul. No. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). "[The Court] will reverse and remand a denial of benefits, even though 'substantial evidence otherwise supports the decision of the Commissioner,' when the ALJ fails to give good reasons for discounting the opinion of the claimant's treating physician." *Friend v. Comm'r of Soc. Sec.*, 374 F. App'x 543, 551 (6th Cir. 2010) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-46 (6th Cir. 2004)).

The ALJ provided good reasons for giving less weight to the opinion of Dr. Paul Lewis, who was Plaintiff's treating physician prior to retiring from the practice of medicine. Additionally, the ALJ's reasons are sufficiently clear to put Plaintiff on notice as to why little weight was given to Dr. Lewis' RFC assessment and the reasons are supported by substantial evidence. The ALJ first noted that there were inconsistencies between Dr. Lewis' RFC assessment and his treatment notes, which showed a normal cardiovascular system and

13

normal musculoskeletal system. [Tr. 21]. Further, the ALJ found that if Dr. Lewis had found the physical and mental limitations while treating Plaintiff "there should have been referrals to specialists with orders for special testing." [Tr. 22]. The ALJ found that the limitations found by Dr. Lewis were supported only by Plaintiff's subjective complaints, not by independent medical testing. [Tr. 22]. Finally, the ALJ found that Dr. Lewis' RFC assessment was not consistent with the overall medical evidence. [Tr. 22].

Dr. Lewis completed his RFC assessment on May 7, 2010. [Tr. 382]. The report indicated moderate back pain, severe coronary artery disease, hypertension, and anxiety. [Tr. 382]. Dr. Lewis did not indicate the severity of the diagnoses of hypertension and anxiety, and also failed to indicate whether any of the diagnoses resulted in functional limitations. [Tr. 382]. Dr. Lewis then indicated that Plaintiff was unable to work due to chest and back pain. [Tr. 382]. Dr. Lewis next found that Plaintiff was impaired in lifting/carrying, could stand or walk less than two hours, could sit less than two hours, could never perform any postural activities, and had limitation functions in reaching, pushing/pulling, heights, moving machinery, and temperature extremes. [Tr. 383-84].

There is substantial evidence in the record that Dr. Lewis' limitations are not supported by the medical evidence. On the

14

same day Dr. Lewis completed his disability assessment of Plaintiff, he examined Plaintiff. [Tr. 386-89]. The treatment plan called for "[p]roper lifting with avoidance of heavy lifting discussed." [Tr. 388]. Thus, Dr. Lewis' own treatment plan for Plaintiff, discussed the same day Dr. Lewis filled out the disability papers, belies the RFC assessment that Plaintiff could never lift. Further, Dr. Lewis' diagnosis after examination does not include coronary artery disease and Dr. Lewis noted under "cardiovascular" that there was "normal rate, regular rhythm, S1 normal, S2 normal, normal heart sounds and intact distal pulses." [Tr. 388].

On October 26, 2009, Dr. Lewis examined Plaintiff. At this time, Dr. Lewis noted that Plaintiff had a normal range of motion in his neck, his cardiovascular system exhibited normal rate, regular rhythm, normal heart sounds, and intact digital pulses, and he was tender in the low back. [Tr. 364]. No diagnosis was made.

On June 15, 2010, Plaintiff reported that "the meds are working well" when visiting for neck and low back pain that runs down his right leg. [Tr. 404]. On May 18, 2010, Dr. Lewis' physician notes include notations of "able to work" and "able to stay active." [Tr. 405]. On September 1, 2010, Plaintiff reported that his pain and anxiety were well-controlled with medication. [Tr. 467]. At an examination on the same date,

Plaintiff was negative for chest pain and leg swelling. [Tr. 468]. His neck had normal range of motion [Tr. 468], his cardiovascular exam revealed normal rate, regular rhythm, and normal heart sounds [Tr. 468], and an exam of his musculoskeletal system revealed a normal range of motion, exhibiting no edema or tenderness. [Tr. 468]. This examination did diagnosis Plaintiff with coronary artery disease. [Tr. 469].

Plaintiff contends that the consultative examination performed by Dr. Najam Azmat supports Dr. Lewis' assessment. However, Dr. Azmat found that Plaintiff was "very limited" based upon his right shoulder. [Tr. 423]. Dr. Lewis found that Plaintiff could not work at all, not that he was limited. [Tr. 381-85]. Plaintiff also contends that the report of Dr. Guberman supports Dr. Lewis assessment. However, the ALJ found Dr. Guberman's assessment was not supported by the objective medical evidence, a finding Plaintiff does not appeal. [Tr. 22]. Therefore, while Dr. Guberman's opinion may support Dr. Lewis' opinion, the ALJ also believed Dr. Guberman's opinion merited little weight and was inconsistent with the objective medical evidence. Thus, there is ample medical evidence that constitutes substantial evidence for the ALJ's decision to give little weight to Dr. Lewis' opinion.

**III. The ALJ improperly relied on the opinion of Dr. Carlos Hernandez; however, the reliance amounts to harmless error.**

Plaintiff contends that the ALJ erred by relying on the report provided by Dr. Carlos X. Hernandez because Dr. Hernandez adopted an RFC that was completed by a single-decision maker without adequate explanation for the included limitations.

The ALJ erred by relying on the opinion of Dr. Hernandez. When explaining Plaintiff's limitations on the RFC assessment, Dr. Hernandez was asked to provide "how and why the evidence support[ed his] conclusions. Cite specific facts upon which your conclusions are based." [Tr. 61]. In each instance, Dr. Hernandez merely referenced the initial RFC assessment performed by a single-decision maker ("SDM"). For example, when asked about the environmental limitations, Dr. Hernandez wrote, "see initial RFC dated 12/7/10 for summary of evidence." [Tr. 61]. While this reference may meet the requirement of stating evidence[2], it does not explain how or why the evidence cited by the SDM supports the limitations provided by Dr. Hernandez. Further, it does not fulfill the instruction to cite to specific facts supporting the conclusion. As the consulting medical examiner Dr. Hernandez was almost completely derelict in his

_____

[2] The evidence presented by the SDM, and incorporated by Dr. Hernandez, was minimal at best. In fact, the only evidence stated by the SDM for the finding of environmental limitations was "limited due to re-current CP and abnml strees [sic] test, specifically ischemia." [Tr. 432].

duties, it was error for the ALJ to give weight to his opinion because there was no way for the ALJ to analyze how or why Dr. Hernandez came to his conclusion.

The Court stresses that it is not holding that a consulting examiner cannot agree with the findings of an SDM. It is possible that two individuals may examine the same medical evidence and come to the same conclusion. Rather, the Court is holding that an ALJ may not rely on the findings of a consulting examiner who wholly fails to explain his findings. Without an explanation for the examiner's conclusion, the ALJ cannot make a reasoned decision as to the weight to give to the consulting medical examiner's opinion. This principle is reflected in the regulations. The regulations specifically provide that "because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions." 20 C.F.R. § 416.927. In this case, it was error for the ALJ to give weight to the opinion of nontreating source, Dr. Hernandez, because he provided no explanation for his opinion.

Although the ALJ improperly relied on the opinion of Dr. Hernandez in discrediting the RFC assessment of Dr. Lewis, the reliance on Dr. Hernandez by the ALJ amounts to harmless error. "[I]f an agency has failed to adhere to its own procedures, we

will not remand for further administrative proceedings unless 'the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) (quoting *Connor v. U.S. Civil Serv. Comm'n*, 721 F.2d 1054, 1056 (6th Cir. 1983)). Plaintiff has not shown that he was prejudiced by the ALJ's reliance on Dr. Hernandez's opinion.

First, while Dr. Hernandez did not fully explain his decision, Plaintiff has failed to show that if Dr. Hernandez set forth the evidence before him that he would have come to a different decision or altered his RFC assessment.

Second, the ALJ did not solely rely on the opinion of Dr. Hernandez in discrediting Dr. Lewis' opinion. The ALJ stated that he agreed with the finding of the state agency medical consultants that Dr. Lewis' opinion was not consistent with the overall medical evidence. [Tr. 22]. However, the ALJ noted this after thoroughly explaining all of the inconsistencies between the objective medical evidence, Dr. Lewis' treatment notes, and Dr. Lewis' ultimate finding of disability. [Tr. 21-23].

Finally, the ALJ did not completely agree with the RFC assessment prepared by Dr. Hernandez. The ALJ specifically stated that the state agency medical consultants "did not consider the potential for pain which would be accommodated by a sti[sic]/stand option." [Tr. 23]. Thus, even without the opinion

19

of Dr. Hernandez, the ALJ provided substantial evidence for giving Dr. Lewis' opinion little weight, and it was harmless error for the ALJ to rely on the opinion of the nontreating medical consultant, Dr. Hernandez.

## V. Conclusion

Accordingly, for the foregoing reasons, **IT IS ORDERED**:

(1) that Plaintiff's Motion for Summary Judgment [D.E. 13] be, and the same hereby is, **DENIED**;

(2) that the Commissioner's Motion for Summary Judgment [D.E. 14] be, and the same hereby is, **GRANTED**.

This the 23rd day of April, 2014.

Signed By:

*Joseph M. Hood*

Senior U.S. District Judge